March 16, 1978

## 78-17    MEMORANDUM OPINION FOR THE ACTING DIRECTOR, OFFICE OF MANAGEMENT AND BUDGET

### Reorganization Plan No. 1 of 1978—Equal Employment Opportunity Commission— Transfer of Function

This responds to your request for our opinion concerning two legal questions raised by § 3(b) of Reorganization Plan No. 1 of 1978, 14 Weekly Comp. Pres. Doc. 398, 43 F.R. 19807.

Under § 3(a) of the Plan, the responsibility for enforcement of equal opportunity in Federal employment, presently lodged in the Civil Service Commission (CSC), would be transferred to the Equal Employment Opportunity Commission (EEOC), an executive branch agency.[1] Section 3(b) of the Plan would empower the EEOC to delegate to the CSC or a successor agency "the function of making a preliminary determination on the issue of discrimination," whenever a Federal employee has alleged in a proceeding before the EEOC that his rights under § 717 of the Civil Rights Act of 1964 have been violated.[2] Your questions arise because it is contemplated that the CSC's successor agency for these purposes would be an independent regulatory agency exercising quasi-judicial powers whose members would not serve at the pleasure of the President.

The first question is whether the independence of this successor agency would be affected by the transfer to it of the responsibility for making a preliminary determination of the merits of a Federal employee's allegation. The task of making such determinations is purely adjudicatory. Under the rationale of the most recent Supreme Court decisions dealing with this general question,

---

[1]This office has taken the position, most recently in our letter to you of February 7, 1978, that commissioners of the EEOC serve at the pleasure of the President and that the Agency is an, executive—as opposed to an independent regulatory—agency.

[2](b) The Equal Employment Opportunity Commission may delegate to the Civil Service Commission or its successor the function of making a preliminary determination on the issue of discrimination whenever, as a part of a complaint or appeal before the Civil Service Commission on other grounds, a Federal employee alleges a violation of § 717 of the Civil Rights Act of 1964, as amended (42 U.S.C. 2000e-16), provided that the Equal Employment Opportunity Commission retains the function of making the final determination.

assignment of an adjudicatory function to an agency then recognized to be "independent" would not alter its independent status in any way. *Cf., Wiener v. United States,* 357 U.S. 349 (1958). We see no basis for a different conclusion here.[3]

The second question is whether limiting the successor agency to making a preliminary determination on the merits of the employee's allegation while retaining in the EEOC the "function of making the final determination concerning such issue of discrimination . . . " would affect the independence of the successor agency. In other words, does the placement of power in an executive agency to review and overturn a preliminary decision reached by an independent agency impinge on the independent status of the latter? We think the answer to this question is "no."

The proposition that executive agencies may be empowered by Congress to review and adopt or overturn decisions made by "independent" agencies or hearing examiners without affecting the independent status of either is well established. For example, the President is authorized by statute to review and reverse certain decisions made by the Civil Aeronautics Board; yet we have no doubt that members of that Board may be removed only for cause under 49 U.S.C. § 1321. More recently, Congress has given the Secretary of Energy the power to implement or reject certain regulatory actions formulated by the Federal Energy Regulatory Commission, an independent agency.[4] The conference report indicates that Congress believed that such review power in the Secretary would not affect the independent status of the Commission. *See* H. Rept. No. 539, 95th Cong., 1st sess., at 78 (1977).

Given the adjudicatory nature of the decisions to be reviewed by the EEOC under § 3(b), we think the history of the use of independent administrative law judges and hearing examiners under the Administrative Procedure Act (APA) of 1946 supports our position. Under § 11 of that Act,[5] these officers were specifically made "independent . . . in their tenure and compensation."[6] One of the major functions performed by administrative law judges is to preside over formal APA proceedings, 5 U.S.C. § 556(c), and then to make the initial decision or recommendation regarding the disposition of the matter before them, 5 U.S.C. §§ 554(d) and 557(b). This decision may then be reviewed by the agency, often an executive agency, which has "all the powers which it would have in making the initial decision . . . ." 5 U.S.C. § 557(b).

Thus, to conclude that EEOC review of preliminary decisions made by a successor agency pursuant to § 3(b) of the Plan would jeopardize the independence of the latter agency would cast grave doubt on the principle under which

---

[3]We drew the same conclusion with regard to this question in our memorandum to W. Harrison Wellford of February 23, 1978.

[4]Department of Energy Organization Act, § 402(c), Pub. L. No. 95-91, 91 Stat. 565.

[5]Section 11 is now codified in various sections of 5 U.S.C., namely, §§ 1305, 3105, 3344, 4301(2)(E), 5362, and 7521.

[6]Administrative Procedure Act—Legislative History, S. Doc. No. 248, 79th Cong., 2d sess., at 215 (1946).

administrative law judges and similar hearing officers have performed equivalent adjudicatory functions for more than three decades during which their independence has never been doubted, although subject to administrative review.

Thus, we conclude that the delegation under § 3(b) of the Plan will not raise questions as to the independent status of the CSC successor agency.

JOHN M. HARMON
*Assistant Attorney General*
*Office of Legal Counsel*

71